Ryan P. Steen (Bar No. 0912084)
ryan.steen@stoel.com
Jason T. Morgan (Bar No. 1602010)
jason.morgan@stoel.com
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: 206.624.0900
Facsimile: 206.386.7500

Attorneys for Alaska Oil & Gas Association, and
American Petroleum Institute

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF WASHINGTON, COMMONWEALTH OF MASSACHUSETTS, STATE OF CALIFORNIA, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF ILLINOIS, STATE OF MAINE, STATE OF MARYLAND, THE PEOPLE OF, THE STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEW JERSEY, STATE OF NEW YORK, STATE OF OREGON, STATE OF RHODE ISLAND, and STATE OF VERMONT, | No.: 3:20-cv-00224-SLG |
| Plaintiffs, | |
| v. | |
| DAVID BERNHARDT, in his official capacity as Secretary of the Interior, UNITED STATES DEPARTMENT OF THE INTERIOR, and BUREAU OF LAND MANAGEMENT, | |
| Defendants. | |

**MOTION TO INTERVENE BY
ALASKA OIL AND GAS ASSOCIATION AND
AMERICAN PETROLEUM INSTITUTE**

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND .................................................................................. 2

    A.      Congress Requires Development of a Leasing Program on the
        Coastal Plain .............................................................................. 2

    B.      BLM Develops the Coastal Plain Leasing Program ................................... 4

    C.      Plaintiffs' Legal Challenge ............................................................. 5

    D.      The Associations' Interest in this Litigation ........................................ 6

III.    ARGUMENT ....................................................................................... 8

    A.      The Associations Are Entitled to Intervene as of Right .............................. 8

        1.      The Associations' motion is timely ............................................. 9

        2.      The Associations have a significant protectable interest in the
            resolution of this action ........................................................ 10

        3.      Disposition in favor of Plaintiffs will harm the interest of the
            Associations' members ......................................................... 12

        4.      Defendants do not adequately represent the Associations'
            interests ........................................................................ 15

    B.      Alternatively, the Associations Are Entitled to Permissive
        Intervention ............................................................................ 17

IV.     CONCLUSION .................................................................................... 18

Case 3:20-cv-00224-SLG   Document 45   Filed 11/16/20   Page 2 of 26

# TABLE OF AUTHORITIES

Page

**Cases**

*Alaska v. Suburban Propane Gas Corp.*,
123 F.3d 1317 (9th Cir. 1997) ................................................................9

*Am. Rivers v. Wheeler*,
No. C 20-04636 WHA, 2020 WL 5993229 (N.D. Cal. Oct. 9, 2020) .............................15, 16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ................................................................10, 12, 15

*In re City of Fall River, Mass.*,
470 F.3d 30 (1st Cir. 2006) ................................................................14

*Colwell v. Dep't of Health & Human Servs.*,
558 F.3d 1112 (9th Cir. 2009) ................................................................9

*Ctr. for Biological Diversity v. Salazar*,
No. 3:08-CV-0159-RRB, 2010 WL 11530782 (D. Alaska Jan. 8, 2010) ................................7

*Ctr. for Sustainable Economy v. Jewell*,
779 F.3d 588 (D.C. Cir. 2015) ................................................................7

*Cty. of Fresno v. Andrus*,
622 F.2d 436 (9th Cir. 1980) ................................................................16

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*,
684 F.3d 1242 (11th Cir. 2012) ................................................................7

*Defenders of Wildlife v. Minerals Mgmt. Serv.*,
No. 10-0254-WS-C, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) ................................7

*Diné Citizens Against Ruining Our Env't v. Jewell*,
No. CIV 15-0209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) ................................7

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) ................................................................11, 17

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) ................................................................18

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                    ii

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
    528 U.S. 167 (2000)...........................................................................................9

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ......................................................................14

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002) .......................................................................17

*League of Conservation Voters v. Trump*,
    303 F. Supp. 3d 985 (D. Alaska 2018) ............................................................7

*League v. Jewell*,
    No. 3:15-CV-00067-SLG, 2015 WL 12516787 (D. Alaska July 23, 2015)............................7

*Cal. ex rel. Lockyer v. United States*,
    450 F.3d 436 (9th Cir. 2006) .........................................................................14

*Nat. Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977)...................................................................14, 16

*Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*,
    947 F. Supp. 2d 1031 (D. Alaska 2013) ...........................................................7

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967)...................................................................10, 15

*Nw. Forest Res. Council v. Glickman*,
    82 F.3d 825 (9th Cir. 1996) ...........................................................................15

*Oceana v. Bureau of Ocean Energy Mgmt.*,
    37 F. Supp. 3d 147 (D.D.C. 2014) ...................................................................7

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ...........................................................................9

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) .........................................................................14

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                              iii

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) ............................................................... 17

*Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*,
921 F.2d 924 (9th Cir. 1990) ................................................................. 8

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002) ............................................................. 14

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) ............................................................... 16

*Sierra Club v. U.S. EPA*,
995 F.2d 1478 (9th Cir. 1993) ............................................................. 10

*Smith v. Marsh*,
194 F.3d 1045 (9th Cir. 1999) ............................................................... 8

*Sw. Ctr. for Biological Diversity v. Berg*,
268 F.3d 810 (9th Cir. 2001) ....................................................... passim

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ............................................................................ 15

*United States v. City of L.A., Cal.*,
288 F.3d 391 (9th Cir. 2002) ...................................................... passim

*Wilderness Soc'y v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) ............................................................. 10

**Statutes**

16 U.S.C. § 668dd ................................................................................. 2

16 U.S.C. § 3142, *et seq.* .................................................................... 2

Administrative Procedure Act ........................................................... 5, 6

Alaska National Interest Lands Conservation Act ........................... passim

Case 3:20-cv-00224-SLG   Document 45   Filed 11/16/20   Page 5 of 26

National Enivronmental Policy Act ................................................................................4, 5, 6

National Wildlife Refuge System Administration Act ............................................5, 6

Pub. L. No. 96-487, 94 Stat. 2371 ..............................................................................2

Pub. L. No. 115-97, § 20001, 131 Stat. 2054 ..............................................................4

**Rules**

Fed. R. Civ. P. 24 ........................................................................................1, 10, 12, 14

Fed. R. Civ. P. 24(a) ....................................................................................1, 10, 12, 18

Fed. R. Civ. P. 24(b) ........................................................................................1, 17, 18

**Other Authorities**

Public Land Order 2214, *Establishing the Arctic National Wildlife Range* (Dec. 6,
1960) ........................................................................................................................2

U.S. Dept. of the Interior, *Arctic National Wildlife Refuge Alaska, Coastal Plain
Resource Assessment Report and Recommendation to the Congress of the
United States and Final Environmental Impact Statement* (Apr. 21, 1987) .............................3

U.S. Energy Information Administration, *Analysis of Projected Crude Oil
Production in the Arctic National Wildlife Refuge* (May 2018) .................................3

USGS, *Arctic National Wildlife Refuge, 1002 Area, Petroleum Assessment, 1998,
Including Economic Analysis*, Fact Sheet 0028-01 ..................................................3

# I. INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Alaska Oil and Gas Association ("AOGA") and the American Petroleum Institute ("API") (together the "Associations") respectfully move for leave to intervene as defendants in the above-captioned litigation. This lawsuit challenges the record of decision ("ROD") issued by the Bureau of Land Management ("BLM") approving the Coastal Plain Oil and Gas Leasing Program.[1] Plaintiffs seek to enjoin that program, and "set aside" the ROD and related decisions and approvals.[2] As set forth below, the Associations' members have a direct interest in defending the Coastal Plain Oil and Gas Leasing Program and meet all of the requirements to intervene as of right under Fed. R. Civ. P. 24(a) or, alternatively, the requirements of permissive intervention under Fed. R. Civ. P. 24(b). For either or both of these reasons, the Court should grant intervention.[3]

---

[1] Dkt. 1 at ¶ 1 (the "Complaint").

[2] *Id.*, Prayer for Relief ¶¶ A-C.

[3] Counsel for Federal Defendants state that they take no position on the Associations' motion to intervene.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG      1

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

## II. BACKGROUND

**A.  Congress Requires Development of a Leasing Program on the Coastal Plain.**

In 1960, Public Land Order 2214 established the "Arctic National Wildlife Range."[4] In 1980, the Alaska National Interest Lands Conservation Act ("ANILCA") expanded the Range and renamed it the Arctic National Wildlife Refuge ("ANWR").[5] Section 1002 of ANILCA expressly directs the Secretary of the Interior to carry out an oil and gas exploration program on ANWR's coastal plain (sometimes called the "1002 Area" or the "Coastal Plain").[6] ANILCA, as enacted, prohibits the leasing and development of oil and gas in the 1002 Area "until authorized by an Act of Congress."[7]

In keeping with ANILCA's directive, the Department of the Interior commissioned more than 1,300 miles of seismic exploration lines in the 1002 Area by a petroleum-industry consortium from 1983 to 1985, as detailed in a 1987 report to

---

[4] Public Land Order 2214, *Establishing the Arctic National Wildlife Range* (Dec. 6, 1960).

[5] ANILCA, Pub. L. No. 96-487, 94 Stat. 2371. ANILCA is codified in various titles of the U.S. Code related to the subject matter or department addressed. The ANILCA sections pertinent to oil and gas leasing in the 1002 Area are sections 303 and 1002, *et seq.*, codified at 16 U.S.C. § 668dd (Note) and 16 U.S.C. § 3142, *et seq.* respectively.

[6] ANILCA § 1002(c).

[7] *Id.* § 1003.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          2

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

Congress.[8] The 1987 Report described the 1002 Area as "the Nation's best single opportunity to increase significantly domestic oil production" and the "most outstanding petroleum exploration target in the onshore United States."[9]

In 1998, the United States Geological Survey ("USGS") updated the 1987 Report's analysis.[10] USGS's 1998 Assessment estimated at least 11.6 billion barrels of in-place oil, which more than doubled the 4.8 billion barrels estimated in the 1987 Report. This new analysis provided valuable insight and reaffirmed the significant potential for oil and gas development in the 1002 Area.[11]

In 2017, Congress passed Public Law No. 115-97—the Tax Cuts and Jobs Act ("Tax Act")—which includes a stand-alone title that expressly directs the Secretary of the Interior to "establish and administer a competitive oil and gas program for the leasing,

---

[8] U.S. Department of the Interior, *Arctic National Wildlife Refuge Alaska, Coastal Plain Resource Assessment Report and Recommendation to the Congress of the United States and Final Environmental Impact Statement* at 3 (Apr. 21, 1987) ("1987 Report").

[9] 1987 Report at *vii*.

[10] USGS, *Arctic National Wildlife Refuge, 1002 Area, Petroleum Assessment, 1998, Including Economic Analysis*, Fact Sheet 0028-01: Online Report, https://pubs.usgs.gov/fs/fs-0028-01/fs-0028-01.htm (last visited Oct. 29, 2020) ("1998 Assessment").

[11] New analysis by the U.S. Energy Information Administration predicts an additional 3.4 billion barrels in crude oil production between 2031 and 2050. U.S. Energy Information Administration, *Analysis of Projected Crude Oil Production in the Arctic National Wildlife Refuge* at 5 (May 2018). Available at https://www.eia.gov/outlooks/aeo/pdf/ANWR.pdf (last visited November 5, 2020).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG    3

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

development, production, and transportation of oil and gas in and from the Coastal Plain."[12] The Tax Act also directs the Secretary to manage the program in a manner similar to the management of the National Petroleum Reserve–Alaska. Congress further placed specific parameters on the establishment and administration of the leasing program, including offering at least two lease sales within 10 years (with each lease sale at least 400,000 acres area-wide), with the first lease sale not later than December 21, 2021.[13]

**B.     BLM Develops the Coastal Plain Leasing Program.**

Pursuant to the requirements of the Tax Act, BLM proceeded to develop the Coastal Plain Leasing Program. BLM issued a final environmental impact statement ("EIS") pursuant to the National Environmental Policy Act ("NEPA") for the Coastal Plain Leasing Program in September of 2019.[14] The U.S. Fish and Wildlife Service issued a biological opinion pursuant to the Endangered Species Act for the Coastal Plain Leasing Program on March 13, 2020.[15]

---

[12] Pub. L. No. 115-97, § 20001(b)(2)(A), 131 Stat. 2054.

[13] *Id*. § 20001(c).

[14] Declaration of Kara Moriarty ("Moriarty Decl.") ¶ 11 (attached hereto).

[15] *Id.*

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          4

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900 Fax (206) 386-7500*

On August 17, 2020, BLM issued its ROD approving the Coastal Plain Leasing Program.[16] The ROD makes approximately 1,563,500 acres available for oil and gas leasing, and consequently for potential future exploration, development, and transportation.[17] The program adopted by the ROD also provides the stipulations and standard operating procedures that lease holders must comply with to ensure protections for surface resources and other uses.[18]

## C.    Plaintiffs' Legal Challenge.

Plaintiffs filed their Complaint in this matter on September 9, 2020. Plaintiffs' Complaint alleges that BLM's EIS and the ROD for the Coastal Plain Leasing Program violate NEPA and the Administrative Procedures Act ("APA").[19] Plaintiffs' Complaint further alleges that the ROD violates the National Wildlife Refuge System Administration Act (the "Refuge Act").[20] Plaintiffs' Complaint additionally alleges that BLM violated the Tax Act.[21]

---

[16] *Id.* ¶ 12.

[17] *Id.*

[18] *Id.*

[19] Complaint at ¶¶ 207–34.

[20] *Id.* ¶¶ 188–206.

[21] *Id.* ¶¶ 235–42.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                  5

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA  98101
Main (206) 624-0900 Fax (206) 386-7500

As relief in this case, Plaintiffs seek a declaration that the Federal Defendants violated NEPA, the APA, the Refuge Act, and the Tax Act.[22] Plaintiffs ask the Court to "set aside" the ROD and EIS.[23] Plaintiffs further ask for preliminary or permanent injunctive relief against implementation of the Coastal Plain Leasing Program.[24]

**D.    The Associations' Interest in this Litigation.**

AOGA is a professional trade association whose mission is to foster the long-term viability of the oil and gas industry for the benefit of all Alaskans.[25] AOGA's membership includes 14 companies that have state and federal interests in oil and gas, both onshore and offshore, in Alaska.[26] AOGA's members have a well-established history of prudent and environmentally responsible oil and gas exploration, development, and production in Alaska.[27]

API is the primary national trade association of the oil and natural gas industry, representing more than 600 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil.[28] Together

---

[22] *Id.*, Prayer for Relief ¶ A.

[23] *Id.* at ¶ B.

[24] *Id.* at ¶ C.

[25] *See* Moriarty Decl. ¶ 3.

[26] *Id.* ¶¶ 3, 5.

[27] *Id.* ¶.

[28] *See* Declaration of Lem Smith ¶ 2 ("Smith Decl.") (attached hereto).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                      6

with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of our nation in an efficient and environmentally responsible manner.[29]

The Associations' members are deeply engaged in the exploration for and development of oil and gas resources in Alaska, and their interests are directly implicated by the claims asserted by Plaintiffs.[30] This Court and federal courts elsewhere have routinely granted both AOGA's and API's motions to intervene as defendants in lawsuits brought by plaintiffs challenging governmental actions with respect to oil and gas activities, including but not limited to lease sales and the issuance of leases.[31]

---

[29] *See id.* ¶¶ 5, 7.

[30] Moriarty Decl. ¶¶ 5, 6, 8-10, 13-15; Smith Decl. ¶¶ 5, 8-12.

[31] *See League of Conservation Voters v. Trump*, 303 F. Supp. 3d 985, 989 (D. Alaska 2018) (API intervenor in challenge related to Executive Order for offshore leasing); *League v. Jewell*, No. 3:15-CV-00067-SLG, 2015 WL 12516787, at *2 (D. Alaska July 23, 2015) (AOGA intervention in challenge to incidental take regulations for Chukchi Sea); *Ctr. for Biological Diversity v. Salazar*, No. 3:08-CV-0159-RRB, 2010 WL 11530782, at *1 (D. Alaska Jan. 8, 2010) (AOGA intervention in challenge to incidental take regulations for Chukchi Sea); *Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*, 947 F. Supp. 2d 1031 (D. Alaska 2013) (API intervention in challenge to geological and geophysical survey permit); *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (API intervened in challenge to five-year leasing program); *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (API intervened in challenge to lease sales and agency use of categorical exclusions to approve exploration plans); *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147 (D.D.C. 2014) (API intervened in challenge to lease sales); *Diné Citizens Against Ruining Our Env't v. Jewell*, No. CIV 15-0209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015) (API intervened in challenges to drilling permits); *Defenders of Wildlife v.*

---

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG    7

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

## III.  ARGUMENT

**A.     The Associations Are Entitled to Intervene as of Right.**

The Ninth Circuit has adopted a four-part test to determine whether a party should be permitted to intervene as of right: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the action.[32] Consistent with all other federal courts of appeal, the Ninth Circuit applies this test broadly in favor of intervention:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.[33]

---

*Minerals Mgmt. Serv.*, No. 10-0254-WS-C, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) (intervened in challenge to lease sale).

[32] *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999) (internal quotation marks and citation omitted).

[33] *United States v. City of L.A., Cal.*, 288 F.3d 391, 397–98 (9th Cir. 2002) (internal quotation marks and citation omitted); *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                8

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA  98101
Main (206) 624-0900 Fax (206) 386-7500

Thus, courts assess a motion to intervene "primarily by practical considerations, not technical distinctions."[34] As discussed below, the Associations meet each of the requirements for intervention as of right.[35]

## 1. The Associations' motion is timely.

When evaluating timeliness, courts in the Ninth Circuit consider (1) the stage of the proceedings, (2) any prejudice to the existing parties, and (3) the reasons for and length of any delay.[36] This litigation was recently filed and is in its preliminary stages. Defendants have not yet filed their answer, and the administrative record has not been lodged. The Associations have acted swiftly and without delay to seek intervention, and no party will be prejudiced by the Associations' intervention. The Associations have submitted a proposed answer to the Complaint along with this motion to avoid any

---

[34] *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). (internal quotation marks and citation omitted).

[35] Although the Associations are not required to separately demonstrate standing to participate as defendant-intervenors, *see Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir. 2011) (per curiam), the interests of the Associations and their members in the Coastal Plain Leasing Program, and the impairment to those interests should Plaintiffs prevail easily satisfies any standing requirement, *see Sw. Ctr. for Biological Diversity*, 268 F.3d at 821 n.3; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 181 (2000) (standing can be based on member interests). Representation in litigation is germane to the Associations' overall purposes of advancing the interests of the oil and gas industry. *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1122–23 (9th Cir. 2009) (finding interests "germane" where opponents' position "will interfere with the achievement of [associations'] goals"); Moriarty Decl. ¶ 4; Smith Decl. ¶ 3.

[36] *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG      9

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

possible delay. Intervention is routinely considered timely at this litigation stage, and no prejudice, delay, or inefficiency will result from the Associations' intervention.[37]

### 2. The Associations have a significant protectable interest in the resolution of this action.

A significant protectable interest exists when an applicant "asserts an interest that is protected under some law" and "there is a relationship between [the applicant's] legally protected interest and the plaintiff's claims."[38] The interest requirement of Rule 24(a) is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[39] Accordingly, "[n]o specific legal or equitable interest need be established" for the Rule 24 test to be

---

[37] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion deemed timely when filed less than three months after complaint was filed and less than two weeks after Forest Service's answer).

[38] *City of L.A.*, 288 F.3d at 398 (internal quotation marks and citation omitted); *id*. (relationship requirement is met where "resolution of the plaintiff's claims actually will affect the applicant" (internal quotation marks and citation omitted)); *see Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993) (intervenor's interest need not be protected by statute put at issue by complaint so long as it is protected by law and relates to claim).

[39] *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *see Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                    10

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

satisfied.[40] To satisfy the "relationship" requirement, an applicant must show that resolution of the plaintiff's claims will affect the applicant.[41]

The Associations' members have a significant and protectable interest in the Coastal Plain Leasing Program. Oil and gas development under the Coastal Plain Leasing Program will be carried out exclusively through private oil and gas companies, which acquire leases through a sealed bidding process and then engage in exploration efforts that, if successful, will lead to production.[42] The Associations' members have been the principal lease bidders on federal lease sales on Alaska's North Slope and adjacent outer continental shelf and the Coastal Plain Leasing Program provides an opportunity for the Associations' members to submit competitive bids for leases on the Coastal Plain.[43] The Coastal Plain Leasing Program provides the terms and conditions for the issuance of those leases, and the conditions guiding development of those leases.[44] The Associations' members thus have a direct interest in this litigation, which seeks to vacate the Coastal Plain Leasing Program.

---

[40] *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (internal quotation marks and citation omitted).

[41] *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

[42] *See* Smith Decl. ¶ 10; Moriarty Decl. ¶¶ 6, 13.

[43] *See* Smith Decl. ¶ 10; Moriarty Decl. ¶ 13.

[44] *See* Smith Decl. ¶ 10; Moriarty Decl. ¶ 13.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          11

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

The interests of the Associations' members are further confirmed by the Associations' comments filed in support of the Coastal Plain Leasing Program.[45] As explained in those comments, development of oil and gas opportunities on the Coastal Plain has been a "high priority" for the oil and gas industry since 1987.[46] The long-term development of oil and gas resources on the North Slope such as the 1002 Area is an important part of the nation's energy future and ensuring the long-term viability of the Trans-Alaska Pipeline System and Alaska's economy.[47] The Associations therefore meet the interest requirement for intervention as of right under Rule 24(a).

### 3. Disposition in favor of Plaintiffs will harm the interest of the Associations' members.

The test for impairment under Rule 24(a) focuses on practical effects. "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."[48] Intervention as of right is particularly appropriate when, as here, the relief sought is injunctive.[49]

---

[45] *See* Smith Decl. ¶ 9; Moriarty Decl. ¶ 10.

[46] Moriarty, Ex. A at 2.

[47] *Id.* at ¶¶ 8-9.

[48] Fed. R. Civ. P. 24 advisory committee's note, *quoted in Citizens for Balanced Use*, 647 F.3d at 898.

[49] *See City of L.A.*, 288 F.3d at 399; *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (where relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, the party satisfies the "interest" test); Complaint, Prayer for Relief.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          12

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

The purpose of Plaintiffs' lawsuit is to invalidate and enjoin the Coastal Plain Leasing Program.[50] If Plaintiffs are successful in their claims, the Associations' members will lose the opportunity to bid on and secure leases in the Coastal Plain, and to ultimately develop those leases.[51] Less draconian remedies or forms of injunctive relief could also impose substantial additional delays or increased regulatory burdens.[52] The Associations thus satisfy the third prong of the intervention test.

Furthermore, although governmental officials are named as the defendants, in practice, the real subject of this lawsuit is future leasing, exploration, and development activities of the Associations' members that will be authorized by the ROD. Indeed, Plaintiffs' alleged injuries stem from the future development that may occur under the Coastal Plain Leasing Program.[53] This clearly qualifies the Associations for intervention as of right because Plaintiffs' lawsuit is targeted at the future actions of the Associations'

---

[50] Complaint, Prayer for Relief ¶¶ A-C.

[51] *See* Smith Decl. ¶ 11; Moriarty Decl. ¶ 14.

[52] *See* Smith Decl. ¶ 11; Moriarty Decl. ¶ 14.

[53] *See, e.g.*, Complaint ¶ 184.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          13

**STOEL RIVES** LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900 Fax (206) 386-7500*

members.[54] Private parties may intervene in defense of challenged actions when their interests could thus be directly affected.[55]

Accordingly, the Court's disposition of this action would impair the ability of the Associations (and their members) to protect their interests. The impairment prong of Rule(a) "look[s] to the practical consequences of denying intervention."[56] Here, as a result of BLM's ROD, the Associations' members will have an opportunity to bid on leases in the 1002 Area as required by the Tax Act on or before December 21, 2021, and

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

[54] *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (party has standing when its activities are the ultimate object of the legal challenge); *see also*, *e.g.*, *Sw. Ctr. for Biological Diversity*, 268 F.3d at 821; *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *In re City of Fall River, Mass.*, 470 F.3d 30, 31 (1st Cir. 2006) (recognizing that intervenor's application to export natural gas was "Petitioners' ultimate target" in seeking to compel agency to issue regulations); Fed. R. Civ. P. 24 advisory committee's note on 1966 amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

[55] *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (foreign governmental agency may intervene in defense of legal challenge to federal regulations that would, if successful, limit sport hunting by U.S. citizens in that country; the country's sheep "are the subject of the disputed regulations"); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor." (emphasis omitted)).

[56] *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (internal quotation marks and citation omitted); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 ("Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." (internal quotation marks and citation omitted)).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG        14

to pursue development of the 1002 Area consistent with that program.[57] Plaintiffs'

lawsuit, if successful, would derail those interests, permanently or temporarily. That is

sufficient grounds to justify intervention as a matter of right.

### 4. Defendants do not adequately represent the Associations' interests.

The Associations' interests are sufficiently different from those of Defendants to

warrant intervention. The burden of demonstrating inadequate representation is minimal.

The Associations need only show that their interests are different from the existing

parties' interests such that their representation "may be" inadequate.[58] The Court must

consider:

> (1) whether the interest of a present party is such that it will
> undoubtedly make all the intervenor's arguments; (2) whether
> the present party is capable and willing to make such
> arguments; and (3) whether the would-be intervenor would
> offer any necessary elements to the proceedings that other
> parties would neglect.[59]

This issue was recently addressed in a lawsuit involving API in *American Rivers v.*

*Wheeler.*[60] The court in *American Rivers* confirmed API's interests were different than

---

[57] Moriarty Decl. ¶ 13; Smith Decl. ¶ 11.

[58] *Citizens for Balanced Use*, 647 F.3d at 898; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823; *Nuesse*, 385 F.2d at 703.

[59] *City of L.A.*, 288 F.3d at 398 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

[60] *Am. Rivers v. Wheeler*, No. C 20-04636 WHA, 2020 WL 5993229, at *2 (N.D. Cal. Oct. 9, 2020).

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG        15

**STOEL RIVES** LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900 Fax (206) 386-7500*

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

the federal agency defendant because it "represents players in the oil, gas, and pipeline industries, business entities beholden to boards, shareholders, and profit," all things that the federal agency could not represent.[61] This "different and necessary viewpoint" was sufficient to show that the government agency may not adequately represent industry interests.[62]

Here, the interests and perspectives of the Associations as a non-federal entity whose members have a direct economic stake in this controversy are very different from the interests of BLM as a federal regulatory agency that must comply with legislative mandates and Executive Branch instruction. When parties, such as the Associations, have private interests, as opposed to the government's "public" interests, this difference is sufficient to justify intervention.[63]

Moreover, the Associations are likely to make different arguments than BLM and present different arguments and approaches on both substantive matters and jurisdictional issues such as standing. The Associations will make arguments that are uniquely within their area of expertise, given their members' substantial expertise in leasing, exploring,

---

[61] *Id*. at *3.

[62] *Id*.

[63] *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24; *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *Cty. of Fresno v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980); *Nat. Res. Def. Council*, 561 F.2d at 912.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                16

and developing oil and gas resources on Alaska's North Slope.[64] The Associations will be able to address practical on-the-ground considerations, in a manner that BLM cannot do. For these reasons too, BLM cannot adequately represent the Associations' interests, and intervention is therefore appropriate.

## B. Alternatively, the Associations Are Entitled to Permissive Intervention.

As with intervention as of right, permissive intervention is construed liberally in favor of the moving party.[65] Permissive intervention should be allowed under Fed. R. Civ. P. 24(b) as long as the applicant for intervention establishes that "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."[66] Under this standard, neither the inadequacy of representation nor a direct interest in the subject matter of the action need be shown.[67]

As addressed above, the interests of the Associations' members in leasing and developing the 1002 Area are placed directly at stake by Plaintiffs' claims. Plaintiffs'

---

[64] Moriarty Decl. ¶ 16; *see Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (granting intervention in litigation over the Secretary of the Interior's decision to recommend establishment of a national conservation area where the non-profit wildlife protection association had specific "expertise apart from that of the Secretary [of the Interior]").

[65] *City of L.A.*, 288 F.3d at 397–98.

[66] *Donnelly*, 159 F.3d at 412.

[67] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1178.

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                 17

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA 98101
Main (206) 624-0900 Fax (206) 386-7500

goal in this lawsuit is to prevent BLM from issuing leases to oil and gas companies, and prevent BLM from authorizing oil and gas companies to develop and explore those leases. The Associations' members are thus the private entities that will be most directly and adversely affected by the relief sought by Plaintiffs. The Associations' interests in defending the Coastal Plain Leasing Program present issues of law and fact common to the main action. In addition, the Associations' motion to intervene is timely and will not prejudice the existing parties. Accordingly, if this Court were to deny the Associations' motion to intervene as of right, permissive intervention should be granted.[68]

## IV. CONCLUSION

For the foregoing reasons, the Associations respectfully request that the Court grant their motion for leave to intervene as of right under Rule 24(a). In the alternative, the Associations respectfully request that they be granted permissive intervention under Rule 24(b).

---

[68] *See Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) (explaining that "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims").

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG                18

DATED: November 16, 2020.

STOEL RIVES LLP


By: _/s/ Ryan P. Steen_
     RYAN P. STEEN (Bar No. 0912084)
     JASON T. MORGAN (Bar No. 1602010)

     Attorneys for Alaska Oil and Gas Association and
     American Petroleum Institute

**STOEL RIVES** LLP
600 University Street, Suite 3600, Seattle, WA 98101
*Main (206) 624-0900 Fax (206) 386-7500*

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          19

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2020, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system.  Participants in this Case No. 3:20-cv-00224-JMK who are registered CM/ECF users will be served by the CM/ECF system.

| | |
|---|---|
| Margaret Ann Bensinger | peggy.bensinger@maine.gov |
| Cindy Chang | cindy.chang@atg.wa.gov |
| | cepseaef@atg.wa.gov |
| Leigh Kathleen Currie | leigh.currie@ag.state.mn.us |
| Ralph K Durstein , III | ralph.durstein@delaware.gov |
| | dirkdurstein@live.com |
| Paul A. Garrahan | paul.garrahan@doj.state.or.us |
| Jason Elliott James | jjames@atg.state.il.us |
| Aurora Rose Janke | aurora.janke@atg.wa.gov |
| | renae.smith@atg.wa.gov |
| Elizabeth Anne Morrisseau | morrisseaue@michigan.gov |
| | perkinsj5@michigan.gov |
| Steven Novick | Steve.Novick@doj.state.or.us |
| Nicholas F. Persampieri | nick.persampieri@vermont.gov |
| Joshua Robert Purtle | joshua.purtle@doj.ca.gov |
| Elizabeth B. Rumsey | liz.rumsey@doj.ca.gov |
| Daniel Matthew Salton | daniel.salton@ct.gov |
| Gregory S. Schultz | gschultz@riag.ri.gov |
| | eullucci@riag.ri.gov |
| Dianna Elizabeth Shinn | dianna.shinn@law.njoag.gov |
| Paul A. Turcke | paul.turcke@usdoj.gov |
| | mike.gieryic@sol.doi.gov |
| | efile_nrs.enrd@usdoj.gov |
| Christian Douglas Wright | christian.wright@delaware.gov |

*/s/ Ryan P. Steen*
Ryan P. Steen

108506970.3 0010627-00051

*State of Washington, et al. v. Bernhardt et al.*
Case No. 3:20-cv-00224-SLG          20

STOEL RIVES LLP
600 University Street, Suite 3600, Seattle, WA  98101
Main (206) 624-0900 Fax (206) 386-7500

Case 3:20-cv-00224-SLG   Document 45   Filed 11/16/20   Page 26 of 26