

United States Department of the Interior

October 24, 2025

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

DECISION

| | | |
|---|---|---|
| Alaska Industrial Development | : | Oil and Gas Leases |
| and Export Authority | : | AA095889 |
| 813 West Northern Lights Blvd. | : | AA095890 |
| Anchorage, Alaska 99503 | : | AA095893 |
| | : | AA095897 |
| | : | AA095898 |
| | : | AA095900 |
| | : | AA095901 |

<u>2021 Suspension of Operations and Production</u>

After careful review of all available information related to the seven oil and gas leases identified in the caption above, the Department of the Interior (Department) has determined that the record before the Department adequately supports the leases as originally issued, and there is no reason to keep the leases in suspended status or to modify the terms of the leases. Therefore, the Department has decided to terminate the suspension of the above-referenced leases put in place by the Suspension of Operations and Production Decision, issued June 1, 2021, and amended August 19, 2022. This decision affirms the leases without modification under the 2025 Record of Decision for the Coastal Plain Oil and Gas Leasing Program, places them in active status, subject to lessee's payment of refunded monies for bids and rentals, and allows the lessee to proceed under the terms of the leases. The reasons for this determination are set forth below.

**I.    Background**

A. Lease Sale

Section 20001 of the Tax Cuts and Jobs Act of 2017, Public Law No. 115-97 (Tax Act) directed the Secretary, acting through the Bureau of Land Management (BLM), to (1) "establish and administer a competitive oil and gas program for the leasing, development, production, and transportation of oil and gas in and from the Coastal Plain"; (2) issue "any rights-of-way or easements across the Coastal Plain for the exploration, development, production, or transportation necessary to carry out [the Program]"; and (3) conduct two oil and gas lease sales by December 2021 and December 2024, respectively, of not less than 400,000 acres each in

1

areas that have the highest potential for the discovery of hydrocarbons. Section 20001 also provided that "[e]xcept as otherwise provided in this section, the Secretary shall manage the oil and gas program on the Coastal Plain in a manner similar to the administration of lease sales under the Naval Petroleum Reserves Production Act of 1976 (42 U.S.C. 6501 et seq.) (including regulations)."

In September 2019, the BLM issued the "Coastal Plain Oil and Gas Leasing Program Environmental Impact Statement" (2019 EIS) in compliance with the National Environmental Policy Act (NEPA). In August 2020, the Secretary of the Interior signed a record of decision (2020 ROD) approving a leasing program and determining where and under what terms and conditions leasing, development, production, and transportation would occur.

During the first lease sale held on January 6, 2021, BLM received 13 total bids on 11 tracts covering 552,802 acres of the 1,089,053 acres offered. On January 13, 2021, the Department issued seven leases to the Alaska Industrial Development and Export Authority (AIDEA). AIDEA abandoned its qualifying high bids on two other lease tracts. The BLM relied on the 2019 EIS for its NEPA compliance for the lease sale and conducted the lease sale and issued leases in accordance with the 2020 ROD.

### B. Executive Order 13990, Secretary's Order 3401, and Lease Suspension

On January 20, 2021, former President Biden issued Executive Order (EO) 13990, entitled Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis, which directed a temporary moratorium on all activities relating to the implementation of the Coastal Plain Oil and Gas Leasing Program, while also directing a comprehensive analysis of the potential environmental impacts of the program. Even though the 2019 EIS included several alternatives that were in conformance with the Tax Act and NEPA, Secretary's Order (SO) 3401, which was issued by former Secretary Deb Haaland on June 1, 2021, purported to identify "multiple legal deficiencies in the underlying record supporting the leases, including, but not limited to: (1) insufficient analysis under the National Environmental Policy Act (NEPA), including failure to adequately analyze a reasonable range of alternatives in the environmental impact statement (EIS); and (2) failure in the August 17, 2020, Record of Decision (ROD) to properly interpret [the Tax Act]."Secretary's Order 3401 directed the initiation of a "process to conduct a comprehensive environmental analysis, complete necessary consultation, and correct the identified legal deficiencies" and "as appropriate and consistent with applicable law, take appropriate action with respect to existing leases in light of the direction provided herein."

Also on June 1, 2021, in accordance with direction provided in Secretary's Order 3401, the Department suspended AIDEA's leases. In the Suspension of Operations and Production Decision, the Department stated: "Based on the identified defects noted above with the NEPA documents underlying the competitive lease sale that resulted in the issuance of the lease(s) referenced above, and in exercise of the Department's inherent authority to correct legal errors, the Department has concluded that it is necessary to suspend the above-referenced lease(s) and complete further environmental analysis under NEPA, consistent with the direction provided in Executive Order 13990 and Secretarial Order 3401."

On August 4, 2021, the BLM issued a *Notice of Intent to Prepare a Supplemental Environmental Impact Statement for the Coastal Plain Oil and Gas Leasing Program*, 86 Fed. Reg. 41,989, which initiated the scoping process.

On August 19, 2022, the Department issued to AIDEA an "Addendum to Suspension of Operations and Production" (Addendum). The Addendum identified the lack of a quantitative estimate of foreign downstream greenhouse gas emissions abroad as an additional legal defect and basis for the suspension and provided that "[t]he BLM is conducting this additional NEPA analysis to determine whether the leases should be affirmed, voided or subject to additional mitigation measures."

### C. Lease Cancellation and Supplemental Environmental Review

On September 6, 2023, on the same day it issued a Draft Supplemental EIS (SEIS), the Department unilaterally canceled AIDEA's seven leases, stating that the leases were improperly issued due to pre-leasing legal defects. In doing so, the Department cited the Secretary of the Interior's inherent authority, under her general managerial power over public lands, to cancel or suspend oil and gas leases issued in violation of a statute or regulation. *Boesche v. Udall*, 373 U.S. 472 (1963).

On November 6, 2024, the Department published its Final SEIS for the Coastal Plain Oil and Gas Leasing Program, and on December 8, 2024, the Department signed a ROD (2024 ROD), selecting a severely restrictive alternative to govern the BLM's further administration of the Coastal Plain Oil and Gas Leasing Program, disregarding statutory direction provided in Public Law No. 115-97.

On October 18, 2024, AIDEA filed a complaint in the U.S. District Court for the District of Alaska, challenging the Department's unilateral cancellation of its seven leases. On March 25, 2025, the District Court ruled in favor of AIDEA, finding that the Department lacked the authority to unilaterally cancel the leases under section 20001(b)(3) of the Tax Act and 43 C.F.R. § 3136.3, which supplanted the Secretary's inherent authority to cancel leases that an agency has subsequently determined were invalid at inception in line with *Boesche. Alaska Indus. Dev. & Exp. Auth. v. United States DOI*, No. 3:24-cv-00051-SLG, 2025 LX 107762 at *17 (D. Alaska Mar. 25, 2025). Notably, the District Court acknowledged that the interpretation of the Tax Act's directive was at issue, and quoted *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 413 (2024) : "[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous," further noting that "Federal Defendants' proposed interpretation of the Tax Act is at odds with how both the Court and DOI have understood how Congress extended the NPRPA regulations to the Coastal Plain program." Ultimately, the District Court vacated the Department's cancellation decision. *Id.* at *22.

### D. Executive Order 14153, Secretary's Order 3422, and Public Law No. 119-21

On January 20, 2025, President Trump issued Executive Order (EO) 14153, entitled Unleashing Alaska's Extraordinary Resource Potential. Among the provisions laid out in EO 14153, section

3(b)(i- vi) directed specific actions to be taken concerning the Coastal Plain Oil and Gas Leasing Program:

> *(i) withdraw Secretarial Order 3401 dated June 1, 2021 (Comprehensive Analysis and Temporary Halt on All Activities in the Arctic National Wildlife Refuge Relating to the Coastal Plain Oil and Gas Leasing Program);*
>
> *(ii) rescind the cancellation of any leases within the Arctic National Wildlife Refuge, other than such lease cancellations as the Secretary of the Interior determines are consistent with the policy interests described in section 2 of this order, initiate additional leasing through the Coastal Plain Oil and Gas Leasing Program, and issue all permits, right-of-way permits, and easements necessary for the exploration, development, and production of oil and gas from leases within the Arctic National Wildlife Refuge;*
>
> *(iii) rescind the final supplemental environmental impact statement entitled "Coastal Plain Oil and Gas Leasing Program Supplemental Environmental Impact Statement," which is referred to in "Notice of Availability of the Final Coastal Plain Oil and Gas Leasing Program Supplemental Environmental Impact Statement, Alaska" 89 Fed. Reg. 88805 (November 8, 2024);*
>
> *(iv) place a temporary moratorium on all activities and privileges granted to any party pursuant to the record of decision signed on December 8, 2024, entitled "Coastal Plain Oil and Gas Leasing Program Record of Decision," which is referred to in "Notice of Availability of the Record of Decision for the Final Supplemental Environmental Impact Statement for the Coastal Plain Oil and Gas Leasing Program, Alaska," 89 Fed. Reg. 101042 (December 13, 2024), in order to review such record of decision in light of alleged legal deficiencies and for consideration of relevant public interests, and, as appropriate, conduct a new, comprehensive analysis of such deficiencies, interests, and environmental impacts;*
>
> *(v) reinstate the final environmental impact statement entitled "Final Environmental Impact Statement for the Coastal Plain Oil and Gas Leasing Program," which is referred to in "Notice of Availability," 84 Fed. Reg. 50472 (September 25, 2019);*
>
> *(vi) reinstate the record of decision signed on August 21, 2020, entitled "Coastal Plain Oil and Gas Leasing Program Record of Decision," which is referred to in "Notice of 2021 Coastal Plain Alaska Oil and Gas Lease Sale and Notice of Availability of the Detailed Statement of Sale," 85 Fed. Reg. 78865 (December 7, 2020);*

On July 4, 2025, section 50104 of Public Law No. 119-21, commonly known as the "One Big Beautiful Bill Act," was enacted, which reaffirmed the direction in Public Law No. 115-97 related to the Coastal Plain Oil and Gas Leasing Program, including the terms and conditions as stated in section 50104(b)(2):

> *(2) Terms and conditions.—In conducting lease sales under paragraph (1), the Secretary shall offer the same terms and conditions as contained in the record of*

*decision described in the notice of availability of the Bureau of Land Management entitled 'Notice of Availability of the Record of Decision for the Final Environmental Impact Statement for the Coastal Plain Oil and Gas Leasing Program, Alaska'' (85 Fed. Reg. 51754 (August 21, 2020)).*

Further, section 50104(b)(3) of Public Law No. 119-21 requires that the Secretary shall conduct not fewer than four additional lease sales, each offering for lease not fewer than 400,000 acres area-wide, at intervals of not later than one year, three years, five years and seven years after the date of enactment.

Following the direction provided in EO 14153 and Public Law No. 119-21, the BLM conducted a review of the existing Coastal Plain Oil and Gas Leasing Program analysis and found it sufficient to support the issuance of a new ROD to comport with the stated direction. On October 22, 2025, the BLM signed a Determination of NEPA Adequacy to support a new ROD. On October 23, 2025, Secretary Doug Burgum signed the new ROD (2025 ROD) selecting Alternative B, as analyzed in the 2019 Final EIS and supplemented in the 2024 SEIS, to govern the BLM's further administration of the Coastal Plain Oil and Gas Leasing Program.

## II. Decision to Terminate Suspension of Operations and Production and Affirm Leases

After conducting a review of the program, including the analysis contained in the 2019 EIS and the 2024 SEIS, the Department concludes that the underlying record supporting the AIDEA's seven leases is legally sufficient, containing sufficient analysis as required by NEPA, the Alaska National Interest Lands Conservation Act (ANILCA), section 106 of the National Historic Properties Act, and section 7 of the Endangered Species Act, and other procedural statutes, and complying with section 20001 of Public Law No. 115-97. This analysis adequately supports the decision made in the 2025 ROD reinstating Alternative B, as analyzed in the 2019 EIS and 2024 SEIS and modified to comply with section 50104 of Public Law No. 119-21. AIDEA's seven leases were originally issued under Alternative B in 2021.

Based on this review and following the Supreme Court's decision in *Seven County Infrastructure Coalition v. Eagle County*, 145 S. Ct. 1497 (2025), the Department now concludes that the record before the Department at the time that the leases were issued was legally sufficient to support the leases. The Department analyzed a reasonable range of alternatives based on the direction provided in the Tax Act and appropriately analyzed greenhouse gas admissions to the extent required under NEPA, as clarified in *Seven County*.

Having reviewed the entirety of the record, including the 2019 EIS and 2024 SEIS and their associated reviews, and the 2025 ROD, the Department has concluded that these seven leases are fully consistent with the 2025 ROD as originally issued and are adequately supported by the underlying record. Therefore, I am terminating the suspension and placing them in an active

status, upon lessee's payment of refunded monies for bids and rentals, allowing lessee to proceed in accordance with the terms of their leases.[1]

This Decision is effective October 24, 2025.

If you have any questions, please contact Wayne Svejnoha with the BLM at (907) 271-4407 or wsvejnoh@blm.gov.

Sincerely,

Katharine Sinclair MacGregor
Deputy Secretary

---

[1] The Department is aware that the District Court's vacatur of the Department's lease cancellation decision is under review before the Ninth Circuit. *AIDEA v. DOI* and *Gwich'in Steering Committee*, Nos. 25-3231 and 25-3344 (9th Cir.). Due to the District Court's ruling, the Department's prior cancellation decision has been vacated and has no effect. However, if the proceedings before the Ninth Circuit result in vacatur of the District Court's decision and potential reinstatement of the 2023 cancellation decision, I am prepared to rescind that cancellation decision for the same reasons, among others, that I am terminating the suspension decision here.